CLERK'S OFFICE U.S. DIST COURT
AT ROANOKE, VA
FILED

AUG 0 9 2005

JOHN F. CORCORAN, CLERK
BY: DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| DAVID L. PRUNTY, ) | |
|    Plaintiff, ) | |
| ) | |
| v. ) | Case No. 6:04-CV-00038 |
| ) | |
| JO ANNE BARNHART, ) | By: Hon. Michael F. Urbanski |
| Commissioner of Social Security, ) |     United States Magistrate Judge |
|    Defendant. ) | |

## REPORT AND RECOMMENDATION

Plaintiff David L. Prunty brought this action pursuant to 42 U.S.C. § 405(g) for review of the final decision of the Commissioner of Social Security denying his claim for disability insurance benefits ("DIB") and Social Security Income ("SSI") under Title II and XIV of the Social Security Act, 42 U.S.C. §§ 401-433, 1381-1383f. The case was referred to the undersigned magistrate judge for report and recommendation. Having reviewed the record and after briefing and oral argument, it is recommended that the Commissioner's motion for summary judgment be granted as her decision is supported by substantial evidence.

## STANDARD OF REVIEW

The court's review is limited to a determination as to whether there is a substantial evidence to support the Commissioner's conclusion that plaintiff failed to meet the conditions for entitlement established by and pursuant to the Act. If such substantial evidence exists, the final decision of the Commissioner must be affirmed. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); Laws v. Celebrezze, 368 F.2d 640 (4th Cir. 1966). Stated briefly, substantial evidence has been defined as such relevant evidence, considering the record as a whole, as might be found

adequate to support a conclusion by a reasonable mind. Richardson v. Perales, 402 U.S. 389, 401 (1971).

## FACTUAL AND ADMINISTRATIVE BACKGROUND

Plaintiff is forty-five years old and completed the ninth grade. (Administrative Record, hereinafter "R.," at 43, 65.) Plaintiff has previously worked as a maintenance worker, truck driver, and glue machine operator. (R. 60) Plaintiff claims onset of disability as of May 5, 1999 due to problems with his arms and wrists. (R. 59) Plaintiff applied for DIB and SSI on October 26, 1999. (R. 43-45, 258-61) Following initial denial of plaintiff's claim, an administrative hearing before an administrative law judge ("ALJ") was held on March 17, 2003. (R. 106-09, 280-81)

Following that hearing, the ALJ issued a decision denying plaintiff's claims for DIB and SSI, finding that plaintiff could perform unskilled light work as a night watchman or flagger. (R. 14-26) The ALJ's decision became final for purposes of judicial review under 42 U.S.C. § 405(g) when the Appeals Council denied plaintiff's request for review. (R. 6-9) Plaintiff then filed this action challenging the Commissioner's decision.

From May 12, 1999 until May 26, 2000, Michael G. Wenkstern, M.D., an orthopedic surgeon, treated plaintiff for bilateral crush injuries to his arms. (R. 195-206) Dr. Wenkstern's notes indicate that plaintiff did not have swelling or atrophy in either arm and that he was capable of performing light work. (R. 195-206) Less than three weeks after Dr. Wenkstern began treating plaintiff, he explained to plaintiff that he "is not totally disabled." (R. 202) When Dr. Wenkstern completed treatment, he opined that plaintiff was capable of performing light-duty

2

work that did not involve frequent "heavy" repetitive use of either arm or lifting over 5-10 pounds with either hand on a continuous or frequent basis. (R. 194)

On June 1, 2001, while on a three-mile bike ride, plaintiff experienced chest pain. (R. 174) Plaintiff sought treatment at a hospital and underwent a battery of tests. (R. 169) Tests ruled out a heart attack, arrhythmia, or ischemia. (R. 169) An examining physician opined that plaintiff's pain was probably secondary to anxiety and attempted to counsel him. (R. 169) The physician also advised plaintiff to curtail his smoking habit, which was up to one and one-half a pack of cigarettes a day. (R. 174)

On June 14, 2002, Daniel Kessler, Psy.D., a consulting licensed clinical psychologist, evaluated plaintiff. (R. 218-23) Plaintiff reported to Dr. Kessler that he was not in counseling and had not received any mental health treatment other than being prescribed Xanax and hospitalized one time for anxiety. (R. 220) Dr. Kessler found that plaintiff had depression that would likely interfere with his ability to perform complex and detailed tasks. (R. 223) However, Dr. Kessler also found that simple, repetitive tasks presented little or no difficulty to plaintiff, that he interacted appropriately, that his social skills did not present a major impediment to getting along with peers and supervisors at work, and that he should have little to no difficulty with regular work attendance. (R. 223)

Plaintiff visited Timothy H. Hooker, M.D. seven times between August 6, 1999 and August 16, 2002. (R. 207-08, 211, 214-16, 253) At no time did Dr. Hooker refer plaintiff to a specialist for evaluation or treatment. (R. 207-08, 211, 214-16, 253) On four occasions, Dr. Hooker completed forms that excused plaintiff from working. In an undated form, Dr. Hooker stated that he would be treating, or had treated, plaintiff from October 15, 1999 through July 16,

3

2000, and that plaintiff either would be, or had been, released to return to work on July 17, 2000. (R. 212) On a form dated July 12, 2000, Dr. Hooker indicated that plaintiff was unable to work from July 12, 2000 to December 31, 2000, but that he could return to work effective January 1, 2001. (R. 213) On a general relief form from Virginia's Department of Social Services dated June 22, 2001, Dr. Hooker indicated that plaintiff was not able to perform heavy work for a period of two months. (R. 210) Another form, completed less than one week later, indicated both that plaintiff's medical condition was "unchanged" but also that plaintiff was permanently disabled. (R. 209) There is nothing in the record to indicate this abrupt change in Dr. Hooker's assessment. (R. 209) Additionally, the record contains a letter dated February 24, 2003 from Dr. Hooker to plaintiff's counsel discussing plaintiff's inability to work. (R. 257) Specifically, it states that plaintiff has carpal tunnel syndrome, panic attacks, and that he is permanently disabled. (R. 257) This record is not accompanied by any other medical records. (R. 257)

At the administrative hearing, the ALJ posed a hypothetical question to the VE. The ALJ asked whether an individual of plaintiff's age and comparable education could work if restricted to performing simple, repetitive, light work. (R. 320) The VE replied that the individual could perform such unskilled light work as a night watchman and flagger. (R. 320)

## ANALYSIS

Plaintiff makes two arguments as to why the Commissioner's decision was incorrect.[1] First, plaintiff argues that the Commissioner erred when she found that plaintiff was capable of working as a night watchman because there is a conflict between the physical demands reported

---

[1] Plaintiff also argued that the ALJ was incorrect in determining that he could perform work as a flagger. At oral argument, the Commissioner admitted that plaintiff could not work as a flagger but continued to maintain that he could work as a "night watchman."

4

by the Dictionary of Occupational Titles ("DOT") and those testified to by the vocational expert. Second, plaintiff contends the Commissioner erred when she did not accord the proper weight to the opinion of Dr. Hooker that plaintiff was completely disabled.

## I. The Testimony of the Vocational Expert Meets the Commissioner's Burden at Step 5.

Plaintiff originally argued that the Commissioner failed to satisfy her burden of showing that other work exists in the national economy. Plaintiff argues that Dr. Wenkstern's testimony prevents plaintiff from working as a flagger, and there are conflicts between the testimony of the VE and the DOT's requirements as to the night watchman position that were unexplained at the hearing. At oral argument, although the Commissioner conceded that plaintiff could not work as a flagger, the Commissioner stated that plaintiff could work as a night watchman as defined by the VE at the hearing. Having reviewed the record, the court finds that the Commissioner has met her burden under Step 5 of the sequential evaluation.

Under the Act, once plaintiff established that he could not perform his past relevant work, the Commissioner has the burden at Step 5 of showing that plaintiff can do other work. 20 C.F.R. §§ 404.1520(f), 416.920(f). Testimony of a VE constitutes substantial evidence for purposes of judicial review where his opinion is based upon consideration of all the evidence in the record and is in response to proper hypothetical questions which fairly set out all of claimant's impairments. See Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989). In this case, the ALJ relied on testimony from a VE to identify jobs that plaintiff could perform in the national economy. The ALJ asked whether an individual of plaintiff's age with comparable education could work if restricted to performing simple, repetitive, light work. (R. 320) The VE replied

5

that the individual could perform such unskilled light work as a night watchman or flagger. (R. 320)

Plaintiff contends that he could not work as a flagger because doing so would require plaintiff to engage in frequent repetitive use of his arms and lift over 5 to 10 pounds with either hand on a continuous basis, something that Dr. Wenkstern testified that plaintiff was unable to do. At oral argument, the Commissioner conceded that plaintiff could not work as a flagger.

However, defendant contended that the medical findings and the VE's testimony at the hearing allowed plaintiff to work as a night watchman. Accepting only those limitations that the ALJ deemed credible, plaintiff could perform work as a night watchman as the position was defined at the administrative hearing.

### A. The ALJ's Decision Regarding Plaintiff's Residual Functional Capacity Was Supported by Substantial Evidence.

The relevant medical findings were based in large part on the opinions of Drs. Kessler and Wenkstern. Dr. Kessler found that simple, repetitive tasks presented little to no difficulty to plaintiff, that he interacted appropriately, that his social skills did not present a major impediment to getting along with peers and supervisors in a work setting, and that he would have little to no difficulty with regular work attendance. (R. 223) Dr. Wenkstern opined that plaintiff was capable of light-duty work that did not involve frequent "heavy" repetitive use of either arm or lifting over 5-10 pounds with either hand on a continuous or frequent basis. (R. 194)

Although plaintiff's counsel posed a hypothetical question including other limitations that caused the VE to exclude all jobs, (R. 320), the limitations included in this question were not supported by the evidence in the record. The question posed by plaintiff's counsel included the

6

individual being limited to light work that required "no frequent or repetitive use of either arm." (R. 321) Dr. Wenkstern, on the other hand, opined that plaintiff was capable of light-duty work that did not involve frequent "heavy" repetitive use of either arm. (R. 194)

At the hearing, the ALJ asked the vocational expert to assume that an individual of plaintiff's age and educational background, who had physical limitations limiting him to light work, and mental or emotional limitations restricting him to simple, repetitive work. (R. 320) To this question, the VE responded that

> [t]here would be a variety of jobs at the light unskilled level. Night watchman would be one. It's light and unskilled. In Virginia, there are approximately 7700 positions. In the U.S. over 318,000.

(R. 320)

When asked to factor in the limitations as described by plaintiff, his sister, and his friend, all of whom came to the hearing as witnesses, the VE stated that plaintiff would not be able to perform this or any other job function. (R. 320)

> Basically, he needs help with his personal care as far as eating, taking care of himself. He's only sleeping approximately three hours per day. He's unable to write anything other than his name. He drops things frequently. He's unable to reach over his shoulder level.

(R. 320-21)

Plaintiff's attorney then revised the hypothetical to assume an individual of plaintiff's age, education, and work experience who is limited to light duty with no frequent or repetitive use of either arm and avoid lifting five to 10 pounds with either hand on a continuous or frequent basis. (R. 321) Under this hypothetical, the VE testified that plaintiff could still perform the night watchman position. (R. 321)

7

Although plaintiff's counsel posed a question that caused the VE to eliminate all jobs, the restrictions set forth in that question are not supported by the record. Indeed, those limitations are greater than those found by Dr. Wenkstern. (R. 321) Plaintiff's questions contemplated a hypothetical individual limited to light work that required "no frequent repetitive use of either arm." (R. 321) Dr. Wenkstern, on the other hand, opined that plaintiff was capable of light-duty work that did not involve frequent "heavy" repetitive use of either arm. (R. 194)

From this, it is clear that the ALJ determined that not all of plaintiff's claimed limitations are credible. His limitations are supported by the testimony of Dr. Wenkstern whereas those proffered by counsel for plaintiff are not. It is clear that the ALJ need not include a limitation, lacking any objective medical findings or support, in a hypothetical question to a VE. See Walker v. Bowen, 889 F.2d 47, 50-51 (4th Cir. 1989) (stating that hypothetical questions must include those impairments supported by the evidence). It is clear from the record that the ALJ did not believe that the limitations included in the questions posed by plaintiff's counsel to the ALJ were credible. Similarly, it is clear that the ALJ did not believe that the limitations described at the hearing were credible. The only limitation that the ALJ believed supported by the testimony were those testified to by Dr. Wenkstern, i.e., that plaintiff is not capable of frequent "heavy" use of either arm. Under such a scenario, the VE testified that plaintiff could work as a night watchman.

### B. The VE's Testimony Met the Commissioner's Burden at Step 5.

First, it is clear that the VE's testimony that there are "a variety" of jobs at the light unskilled level that plaintiff can perform does not meet the Commissioner's burden at Step 5. See Allen v. Sullivan, 880 F.2d 1200, 1202 (11th Cir. 1989) (holding that the ALJ must articulate

8

specific jobs that exist in the national economy that plaintiff can perform). Further, as the Commissioner withdrew its position that plaintiff could not perform work as a flagger at oral argument, the only remaining question is whether plaintiff can perform work as a night watchman.

Nevertheless, substantial evidence supports the ALJ's conclusion that plaintiff could work in the night watchman position. During oral argument, the question was raised whether the VE's testimony conflicted with the definition of a night watchman in the Dictionary of Occupational Titles ("DOT"). To insure that such conflicts do not go unresolved, the Agency created Social Security Ruling ("SSR") 00-4p, which states that

> [w]hen there is an apparent, unresolved conflict between the VE or VS evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE or VS evidence to support a determination or decision about whether the claimant is disabled.

Id. See, e.g., Lellhame v. Barnhart, 128 Fed. Appx. 618, 620 (9th Cir. 2005) (remanding where the VE testified that plaintiff could work as a hand packer but plaintiff could not do so because plaintiff lacked the capacity to understand English described in the DOT).

In this case, however, no such conflict exists as the term "night watchman" is not included in the DOT. It is clear under the regulations that the ALJ is permitted to rely on the testimony of the VE in reaching his decision. 20 C.F.R. § 404.1566(e) (recognizing that the Commissioner may rely on the testimony of the VE to determine whether a claimant's work skills can be used in other work and for the job functions for which they can be used). Because the VE specified what the job functions of a night watchman were and described how plaintiff's limitations were compatible with these job functions, the Commissioner met its burden under

9

Step 5. At the hearing, the VE testified that the position "night watchman" does not entail frequent, repetitive use of either arm. (R. 321) Second, the VE stated that the "night watchman" is only required to write his name or log in a time once an hour and that if some type of significant incident occurs, he may be required to write about it. (R. 321) Third, the VE testified that this position does not require use of either arm for lifting. (R. 322) This testimony allowed the ALJ to compare this job to plaintiff's limitations.

Further, the VE's testimony establishes that there are a significant number of jobs in the national economy. The VE reported that the job "night watchman" existed in substantial numbers, with 7,700 positions statewide and 318,000 nationally. (R. 320) Under applicable regulations, work exists in the national economy if it exists in significant numbers in either the region where the claimant resides or in several other regions of the economy. See 20 C.F.R. § 404.1566; see also Hicks v. Califano, 400 F.2d 1048, 1051 n.2 (4th Cir. 1979) (finding that a VE's testimony that 110 jobs exist is a significant number of jobs for the purposes of the regulation); Hall v. Bowen, 837 F.2d 272, 275 (6th Cir. 1988) (finding that 1,350 jobs was a significant number of jobs).

The VE's testimony is sufficient to meet the Commissioner's burden under Step 5, i.e., whether there are a significant number of jobs that plaintiff can perform in the national economy. See Phillps v. Barnhart, 357 F.3d 1232, 1240 (11th Cir. 2004). Under 20 C.F.R. § 404.1566(d), the Commissioner is entitled to take notice of job number information in the DOT, in County Business Patterns published by the Bureau of the Census, in Census Reports, in Occupational Analyses, prepared for the Social Security Administration by State employment agencies; and Occupational Outlook Handbook, published by the Bureau of Labor Statistics. This list,

10

however, is not exclusive because plaintiff is permitted under 20 C.F.R. § 404.1566(e) to use a VE when faced with more complex issues. Here, the VE specified the number of jobs available for the night watchman position he described. As such, the VE's testimony is sufficient to meet the Commissioner's burden at Step 5 of the sequential analysis.

## II. The Commissioner Did Not Err in According the Weight She Gave to Dr. Hooker's Opinion that Plaintiff was Disabled.

Additionally, plaintiff contends that the ALJ erred in not according enough weight to the opinion of Dr. Hooker that plaintiff was disabled. Plaintiff indicates that Dr. Hooker's has indicated that plaintiff suffers from bilateral carpal tunnel syndrome and panic attacks and that plaintiff has reached the maximum medical benefit of his rehabilitation process and that he is permanently disabled. Having reviewed the record and the case law, the court finds that the ALJ did not err in giving Dr. Hooker's opinion the weight that he did.

Although 20 C.F.R. § 404.1527 and 20 C.F.R. § 416.927 dictate that the opinions of a treating physician are generally entitled to more weight than those of a non-treating physician, the regulations do not require the ALJ to accept such opinions in every situation. For instance, the ALJ is not required to accept the opinions of a treating physician when the physician opines on an issue reserved for the Commissioner, see 20 C.F.R. §§ 404.1527(e), 416.927(e), or when that opinion is inconsistent with other evidence or is not well-supported. See 20 C.F.R. §§ 404.1527(d)(3), (d)(4); 416.927(d)(3), (d)(4). The regulations provide that a treating physician's opinion is entitled to controlling weight only where it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other

11

substantial evidence in the record. See Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996); 20 C.F.R. §§ 404.1527(d)(2), 404.927(d)(2).

Here, the ALJ provided five reasons why he rejected Dr. Hooker's findings. First, the ALJ pointed out that they were unsupported; Dr. Hooker failed to explain the medical signs or findings that formed the basis of plaintiff's disability. (R. 19) Second, the ALJ pointed out that Dr. Hooker did not explain his reasons for stating that plaintiff could not return to work on the dates he identified. (R. 19) Third, the ALJ pointed out that Dr. Hooker failed to explain why he decided that plaintiff was permanently disabled. (R. 19) Fourth, the ALJ pointed out that Dr. Hooker failed to identify the specific restrictions that precluded work. (R. 19) Fifth, the ALJ pointed out that Dr. Hooker's findings regarding disability were inconsistent with each other. (R. 24)

In rejecting Dr. Hooker's opinion, the ALJ acted within his discretion. First, Dr. Hooker's opinion that plaintiff was disabled was an issue reserved to the Commissioner. As such, it is not entitled to the same degree of deference. See 20 C.F.R. §§ 404.1527(e), 416.927(e). Dr. Hooker's findings are inconsistent both with much of the rest of the record and with themselves. Where treating physician's opinions are inconsistent, they are not entitled to the same degree of deference. 20 C.F.R. §§ 404.1527(d)(3), (d)(4); 416.927(d)(3), (d)(4). Finally, as discussed above, the ALJ is not bound by a treating physician's opinion if it is not supported by medically acceptable clinical or laboratory diagnostic techniques. See 20 C.F.R. §§ 404.1527(d)(2), 404.927(d)(2) Here, Dr. Hooker's opinions are not. As such, Dr. Hooker's findings are not entitled to the same degree of deference. As such, the ALJ acted appropriately in

12

not according Dr. Hooker's findings the traditional degree of deference that treating physician's opinions typically receive.

Given the standard of review provided under 42 U.S.C. § 405(g), the court must affirm the decision of the ALJ as substantial evidence exists to support the conclusion that plaintiff was not disabled as defined under the Social Security Act. See Pierce v. Underwood, 407 U.S. 552, 565 (1988); King v. Califano, 559 F.2d 597, 599 (4th Cir. 1979). As such, defendant's motion for summary judgment is granted.

In affirming the final decision of the Commissioner, the court does not suggest that plaintiff is totally free of all pain and subjective discomfort. The objective medical record simply fails to document the existence of any condition which would reasonably be expected to result in total disability for all forms of substantial gainful employment. It appears that the ALJ properly considered all of the objective and subjective factors in adjudicating plaintiff's claim for benefits. It follows that all facets of the Commissioner's decision in this case are supported by substantial evidence.

## CONCLUSION

For the reasons outlined above, it is the recommendation of the undersigned that the Commissioner's motion for summary judgment be granted. The Clerk is directed immediately to transmit the record in this case to the Hon. Norman K. Moon, United States District Judge. Both sides are reminded that pursuant to Rule 72(b) they are entitled to note any objections to this Report and Recommendation within ten (10) days hereof. Any adjudication of fact or conclusion of law rendered herein by the undersigned not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections

13

pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings as well as to the conclusions reached by the undersigned may be construed by any reviewing court as a waiver of such objection.

The Clerk of the Court hereby is directed to send a certified copy of this Report and Recommendation to plaintiff and all counsel of record.

Enter this \_\_9-th\_\_ day of August, 2005.

/s/ Michael F. Urbanski
Michael F. Urbanski
United States Magistrate Judge

14

Case 6:04-cv-00038-NKM-mfu   Document 23   Filed 08/09/05   Page 14 of 14   Pageid#: 84